THE COMMERCIAL LEAGUE ASSOCIATION OF AMERICA

*v.*

THE PEOPLE *ex rel.* Thomas B. Needles, Auditor, etc.

1. CORPORATION—*when not a life insurance company.* Under the amendatory act of March 28, 1874, relating to life insurance companies, a corporation issuing policies on the lives of its members is not deemed an insurance company, within the meaning of the prior law requiring a guarantee capital of $100,000 in money or securities, when it is an association intended only to benefit widows, orphans, heirs and devisees of deceased members, and no annual dues or premiums are required, and its members receive no money as profit or otherwise.

2. An association issuing policies on the lives of its members, payable, in case of death, to the widow, orphans, heirs and devisees of the members, and to them alone, and which provides, by its by-laws, that each member may be assessed for the general expense fund such sums as may be determined upon by the trustees, not to exceed $20 in any one year, is not a life insurance company under the statute which requires a capital of $100,000 in money or securities before transacting its business, and the act amendatory thereof.

3. SAME—*compensation to officers.* The clause in the act of 1874, that no member shall receive any money as profit or otherwise, was designed to prevent the corporation from making dividends of profits among its members. The payment of an officer, who is a member, for services rendered, would not be "receiving money as profit."

APPEAL from the Circuit Court of Cook county; the Hon. JOHN G. ROGERS, Judge, presiding.

This was an information, in the nature of a *quo warranto*, in the name of the people on the relation of the Auditor of the State, against a corporation, organized under the laws of the State, known as The Commercial League Association of America, in which it is alleged that said company, a corporation incorporated under and by virtue of the laws of the State of Illinois, and having its principal office in Chicago, for the space of two months now last past, to-wit, at the county aforesaid, has exercised, and still does exercise, powers and franchises not conferred by law upon said corporation, and without any warrant, grant or charter therefor, in this, to-wit: that the said corporation, during the time aforesaid, at the county aforesaid, has carried on and prosecuted the business and exercised the franchises, and does still carry on and prosecute the business and exercise the franchises of life insurance, within the State of Illinois, as a life insurance company, without having a guarantee capital of $100,000, paid in in money, and invested in stocks of the United States, or of this State, or of any city or town in this State, estimated at their market value, or in other stocks or securities approved by the Auditor of Public Accounts of the State of Illinois, or in mortgages which are a first lien on real estate in this State, worth, at least, twice the amount of money loaned thereon, with an abstract showing a good and sufficient title to said real estate, and a certificate of two reputable land owners, under oath, certifying to the value of said property. And also, in this, that said corporation, during the period aforesaid, to-wit, at the county aforesaid, in the way of its said business, has, from time to time, issued, and still does issue, policies of insurance to the several members of said corporation, in the form of certificates of insurance on the lives of its said members respectively, for premiums and annual assessments in money paid and to be paid by the several persons so insured, the Auditor of Public Accounts of this State having never issued any certificate authorizing said corporation to

issue policies or certificates of insurance, contrary to the statute in such cases made and provided.

To the information the defendant corporation filed two pleas, in which it is averred, that on the 4th day of September, 1877, nine persons, whose names are stated, citizens of the United States, desirous of associating themselves together for a lawful purpose other than for pecuniary profit—that is, for the purpose of securing pecuniary aid to the widows, orphans, heirs or devisees of such persons as might become members of their association under an act of the General Assembly, entitled "An act concerning corporations," in force July 1, 1872—signed and acknowledged articles of association set out in the plea stating the name of the association; that its particular business and object should be to secure pecuniary aid to the widows, orphans, heirs or devisees of its deceased members; that its principal office should be at Chicago; that on the 4th day of September these articles of association were filed in office of the Secretary of State, and, on the same day, that official duly issued a certificate of organization to the association, which was, on the next day, recorded, and thereby the association became and since has been a body corporate, entitled to use and enjoy all privileges and franchises conferred on it by its act of incorporation and the law of the land; that the association adopted certain by-laws, set out in the plea, not inconsistent with the laws of the United States, or this State, and afterwards received members in pursuance of such by-laws, and issued to each of its members so received a certain certificate of membership in the association, a copy of which is also set out in the plea, whereby the association agreed, ninety days after receiving evidence of the death of the member to whom the certificate was issued, to pay to his widow, orphans, heirs or devisees, as might be provided in the certificate, but *to no one else,* a certain benefit, therein specified; that the certificates of membership so issued by the association, and the agreement to pay the benefit to the member's widow, orphans, heirs or devisees, as the case might be,

were issued and made in consideration of an initiation fee of
$50, and an advance assessment of $10, paid by each member
at the time, and also, in consideration of the agreement of the
member to pay to the association, for benefits to the widow,
orphans, heirs or devisees of future deceased members of the
association, and for no other purpose, and to no other person,
a certain sum of money, which, in each case, was graduated by
the age of the member agreeing to pay the same, according to
the form and effect of section 1, article 5, of the by-laws, and
to pay all assessments made by the trustees of the association
for *expenses, not to exceed the sum of* $20 *in any one year.*

It is also alleged, that the association had never agreed to pay
any money or give any benefit to anybody except to the
widow, orphans, heirs or devisees of deceased members,
upon the death of a member; that no annual dues had been
required, nor had any member received, or agreed to receive
from the association, nor has the association ever agreed to
pay, any money or thing as profit or otherwise; that the pres-
ident, vice-president and executive committee of the association
have been, chosen from the members, none of whom have
received any fee or salary or compensation whatever, but each
has served gratuitously; that no member of the association or
officer has ever received, or agreed to receive, any money or
thing, as profit, from the association.   The benefit which the
association agreed to pay on each certificate issued was agreed
to be paid to the widow, orphans, heirs or devisees only of
the member to whom issued and only in case of death, and
was a sum of $10 for each member of the association who had
made a deposit of the assessment made by the association for
this purpose, and the amount of the assessment which each
member agreed to pay on the death of a member to raise the
benefit for the deceased member's widow, orphans, heirs or
devisees, fixed by the by-laws which are set out in the pleas.

To the pleas a demurrer was interposed, which the court
sustained, and the defendant electing to stand by the pleas, a
judgment of ouster was rendered.

Mr. James E. Munroe, and Mr. Francis A. Riddle, for the appellant.

Mr. E. B. Sherman, and Mr. G. W. Kretzinger, for the appellees.

Mr. Chief Justice Craig delivered the opinion of the Court:

The information in this case was filed under sections 1 and 2 of "An act to organize and regulate the business of life insurance," approved March 26, 1869, which are as follows:

"Before any life insurance company goes into operation, under the laws of this State, a guarantee capital of at least $100,000 shall be paid in money and invested in stocks of the United States or this State, or of any city or town in this State, estimated at their market value, or in such other stocks and securities as may be approved by the Auditor of Public Accounts, or in mortgages being first liens on real estate in this State, the said real estate being worth twice the amount of the money loaned thereon, with abstract showing a good title thereto, and the certificate of two landholders, under oath, certifying to the value of said property."

"No policy shall be issued until a certificate from the Auditor has been obtained, authorizing such company to issue policies. The Auditor shall examine the capital, and a majority of the directors shall make oath that the money has been paid in by the *stockholders towards payment of their respective shares,* and not for any other purpose, and that it is intended the same shall remain as the capital of the company, to be invested as required by the laws of this State." Rev. Stat. 1874, p. 604.

In the decision of the question presented by the demurrer to the pleas, it will not be necessary to determine whether the first section of the act *supra* relates exclusively to companies organized and doing business on the stock plan, or whether it might embrace insurance companies of a purely mutual char-

acter, which may have no capital or capital stock, but the revenues of which consist principally of the promise of its members to contribute in the payment of losses as they may occur.   The real point to be determined, as we understand the question, is, whether appellant is a life insurance company, within the meaning of the act of 1869, or does it fall within the spirit and intent of the last clause of sec. 31, chap. 32, Rev. Stat. 1874, page 291, which declares: "Associations and societies which are intended to benefit the widows, orphans, heirs, devisees of deceased members thereof, and where no annual dues or premiums are required, and where the members shall receive no money, as profit or otherwise, shall not be deemed insurance companies."

The appellant was, no doubt, an insurance company, in the general and enlarged sense of that term.   It issued policies to its members, which were payable upon the death of the member whose life was insured, and did various other acts which are usually done by life insurance companies, but this did not necessarily bring it within the definition of a life insurance company, as that term is used in the act.   But if appellant was to be regarded an insurance company within the meaning of the act of 1869, the act of 1874 has so amended the act of 1869, that companies organized and doing business as was appellant do not, since the amendment, fall within the provision of the act of 1869.

A bare reference to the organization of appellant, its powers, duties, and the mode of transacting its business, as shown by the averments of the pleas, will clearly demonstrate that it comes within the act of March 28, 1874.

Three things seem to be required to bring the company within the amendment of the act:   First, it must be an association intended to benefit the widows, orphans, heirs and devisees of the deceased members; second, no annual dues or premiums shall be required; third, the members shall receive no money, as profit or otherwise.

It will be observed that the policies are payable, in case of

loss, to the widow, orphan, heir or devisee, and to them alone. This fact, of itself, would seem to be sufficient to demonstrate that the object of the association was intended to benefit such persons, and such only, as no other person can derive any benefit from it whatever.

As to the second point, it is expressly averred in the pleas, that the association has never required or received annual dues or premiums from any member; but it is contended that the association requires annual dues by reason of a by-law which provides that each member may be assessed for the general expense fund of the association, for such sums as may be determined upon by the board of trustees, not to exceed $20 in any one year. There is nothing in this by-law which requires the payment of annual dues or premiums. No sum whatever is required to be paid by the members annually. The by-law merely empowers the trustees, when it may be necessary, to require a member to contribute a sum, not exceeding $20 in any one year, for the purpose of liquidating the expenses of the association. Under the by-law, the amount is not to be raised annually. An assessment may not be made oftener than once in three or five years. It could only be made when it was necessary to raise a fund to cover expenses. This is entirely different from an annual assessment. An annual assessment, as we understand the term, would require the payment of a specified sum each year, while under the by-law an annual payment is not required. Indeed, no assessment could be made except at such time as the money was actually needed to defray the expenses of the association.

The third requirement, to bring the case within the amendment is, that the members shall receive no money, as profit or otherwise. It is averred in the pleas, that the only officers of the association who are, or ever were, members thereof, are the president, vice-president and members of the executive committee, and none of them have received, or agreed to receive, nor has the association ever agreed to pay them, or any of them, any money or other thing, but they all have served

the association gratuitously; that no other officer of the association is, or ever has been, a member thereof, and no member has ever received from the association any money or other thing, as profit or otherwise.

These averments, which are admitted by the demurrer to be true, seem to meet fully all the demands of the statute. The by-laws, however, which are set out in the pleas, provide that the officers may receive such compensation as may be agreed upon between them and the trustees, and hence it is claimed, members who are officers receive money as profits. The association can not be condemned because it may have passed a by-law which has never been enforced, nor should a judgment of ouster be rendered on that ground.

But the by-law, if enforced, would not be inconsistent with the statute. The section of the statute should receive a reasonable construction, and when this is placed upon it, we doubt if any court could properly hold that if a member was an officer of the association, and was paid a compensation for his services, such payment would be "receiving money as profit or otherwise." The object of the statute, no doubt, was to prevent the corporation from making dividends of profits among the members, as do corporations organized for pecuniary profit; and while the statute might subserve a useful purpose if construed in this manner, we fail to perceive any benefit which would result if a member of the association, who happened to fill an office, should be deprived of receiving compensation for his labor as an officer. Compensation for labor can not be regarded as profit, within the meaning of the law. The word "profit," as ordinarily used, means the gain made upon any business or investment—a different thing altogether from mere compensation for labor.

If we are correct in our construction of the statute, the pleas set up a complete defense to the information, and the demurrer to them should have been overruled.

The judgment will be reversed and the cause remanded.

*Judgment reversed.*