## CANTON MASONIC MUTUAL BENEVOLENT SOCIETY
### V.
## CHARLES W. ROCKHOLD.

*Life Insurance—Mutual Benefit Societies—Members Can Not Receive Benefits—Illegal Contract.*

1. A member of an association or society organized under the amenda-tory and last clause of Sec. 31, Chap. 32, R. S., to benefit the wives, orphans, heirs and devisees of its deceased members, can not receive any money as profit or otherwise from such association or society.

2. A contract between such a society and a member for the payment of a certain sum of money to him upon his arriving at the age of seventy years, is void.

3. An agreement to do a thing contrary to law can not be enforced by either party against the other.

[Opinion filed March 20, 1888.]

APPEAL from the Circuit Court of Peoria County; the Hon. T. M. SHAW, Judge, presiding.

This was an agreed case submitted to the Circuit Court of Peoria County, at its May term, 1887. That court found the law of the case to be with Charles W. Rockhold, the plaintiff below, and that the defendant society was indebted to him in the sum of $1,836, and thereupon rendered judgment in ac-cordance with such findings and for costs, and awarded execu-tion.

The agreed case upon which the controversy was submitted, consisted of the following facts and points of law, to wit:

First. That said defendant is a corporation, organized under the laws of the State of Illinois relating to corporations, not for pecuniary profit and not an insurance company, as defined by the statute under which the said company was organized, its object being to give financial aid and benefit to the widows, orphans and heirs or devisees of deceased members, as set forth in the certificate of organization issued by the Secretary

of State, with the accompanying statement of the particular business and objects for which it was formed, said certificate being dated March 30, 1874, and on the 9th day of April, 1874, adopted a constitution and by-laws, and said defendant corporation commenced to do business and continued up to the present time.

Second.  That the constitution of said corporation contained in Art. 7, Sec. 1: That the board of directors shall pay to the members holding certificates a sum equal to one dollar ($1.00) for every member of the division to which he shall belong, upon such surviving member arriving at the age of seventy years, or after he shall have been a member for twenty-five consecutive years; and that Art. 6, Sec. 1, of the by-laws of said defendant corporation requires the board of directors of said corporation to furnish all members of said society with a certificate containing the agreement on the part of the society and its members.

Third.  That, to wit, on the 24th day of May, A. D. 1875, the plaintiff became a member, and a certificate of membership in said society was issued to the said plaintiff, containing the provisions of said Art. 7 of the constitution of said society, to pay a benefit to said plaintiff on his arriving at the age of seventy years.

Fourth.  That said plaintiff has, since the time of receiving said certificate, paid all assessments, Nos. 1 to 51 inclusive, such assessments amounting in the aggregate to $165.60, the same being all assessments for which said plaintiff was liable by virtue of holding said certificate, and being a member of said society.  But in no case has said defendant corporation exercised the power of paying or collecting benefits to be paid to living members of said society, and in no case has the plaintiff been required by said society to pay any such assessments, the defendant believing it had no power to make any such assessments.

Fifth.  Said plaintiff, to wit, on the 25th day of December, A. D. 1886, arrived at the age of seventy years, and that thereupon he served notice upon said corporation defendant, making proof that he had arrived at the age of seventy

years, and demanded that he be paid the amount due him by the terms of his certificate. No objection has been made to said notice.

That Division A, of which he was a member, then contained 1,836 members; but only 597 members of Division A held certificates containing said clause, to pay benefits to living members, and 1,239 of said members of Division A held certificates in which only benefits were to be paid to the widows, orphans and heirs or devisees of said deceased member.

And that said president and said officers of said society, or its board of directors, have neglected and refused, and now neglect and refuse to make such assessment, or to pay said sum equal to the members in said Division A, as aforesaid, or any part thereof.

Sixth. That after notice by the Auditor of the State of Illinois, as set forth in Sec. 7 of this agreement, the secretary of said defendant corporation, by order of the board of directors, issued and gave notice to each member of said society, that the issuing of certificates containing the endowment clause, to pay benefits to living members, would be discontinued and the same stricken out. That at the annual meeting of said society held April 4, 1883, a resolution was offered in writing that the constitution of said society be so amended that Arts. 1 to 11 be thereafter known as by-laws, and not a part of the constitution.

That at the annual meeting of said society held April 2, 1884, the said resolution was referred to a committee of said members to report at the next annual meeting.

And at the next annual meeting of said society held April 1, 1885, said committee reported to amend said resolution, and by the unanimous vote of said society, voting upon that question, said amendment was adopted, and that said Arts. 6 and 7 of the constitution were abolished, and the same became a by-law of said society.

That the board of directors of said society, at a regular meeting of said board, held on the 21st day of April, A. D. 1885, appointed a committee to revise the by-laws of said society, who

reported at the same meeting of said board an amendment to the by-laws of said society (whereby all parts of Arts. 6 and 7 of the by-laws of said society, which paid benefits to living members of said society, now numbered 3 and 4 of the by-laws of said society, were stricken out and abolished), which report was adopted with other amendments made to said by-laws, and the secretary of said board of directors was ordered to have published such amendment as well as other amendments made to said constitution and by-laws and mailed to each member of said society, of which this plaintiff was a member, but said plaintiff has never acquiesced in the validity of the action of said board of directors.

Seventh. The Auditor of the State of Illinois, and *ex officio* Insurance Commissioner of said State, notified the officers of the defendant corporation to cease issuing certificates containing provisions to pay to living members of said society, and that he, as well as the Attorney General of said State of Illinois, stated and so informed the officers of the society, that if they or the said society attempted to carry out the provision of said certificate, paying living members of said society, they would take steps to arrest and cancel the charter of said society, and prosecute said officers for a violation of law governing such corporations.

Eighth. That said plaintiff was present at the annual meeting, mentioned as being held April 4, 1883, in paragraph sixth hereof, at the time said amendments were made in its constitution and by-laws as aforesaid, and objected to having such amendments so made, and has ever since objected to the action of said society, and of its board of directors, in that regard.

That in consequence of said notice of said Auditor and said Attorney General, as aforesaid, to-wit, on the 21st day of November, A. D. 1881, said society made said change in the form of certificates issued by said society.

That after the aforesaid action of said society, and of the said board of directors, in regard to the amendments to said constitution and by-laws, and the issuing of amended form of certificate, the plaintiff has continued to pay assessments that

have been since then made, with other members who have held the amended form of certificate.

It is further agreed that the court is to construe the exhibits hereto, and the proceedings of the defendant herein set forth, according to their legal effect, notwithstanding any language herein contained which might deem to give construction to the same by agreement or acquiescence.

That the said parties to this agreement submit the following points of law at issue between them on the foregoing statement of facts. The said plaintiff maintains the law to be as follows:

I. The constitution of said defendant constitutes a contract with the plaintiff; that the same is within the legislative power of the defendant, and upon the reception of the said plaintiff as a member of said association, and upon his paying the assessments made upon him until he became seventy years of age, as shown by the agreed state of facts, the defendant became liable to pay him the sum of one dollar for each member of the class to which he belonged, to-wit, $1,836, within sixty days after proof of his having arrived at that age.

II. Although the said provision in said defendant's constitution may not be strictly within the scope of defendant's powers as a corporation, yet, after receiving plaintiff's money on assessments made by defendant until the time when the money therein mentioned became due and payable, defendant can not now set up in its defense a want of power to make and enter into said contract.

III. The certificate of membership issued by said defendant to said plaintiff is conclusive evidence of the existence of a contract between plaintiff and defendant, as provided in the defendant's constitution and by-laws, at the time said certificate was issued, and so long as plaintiff continued to comply with all the conditions of his membership.

IV. The said certificate of membership is of itself a valid contract between the plaintiff and defendant, which, upon plaintiff's complying with all the conditions therein expressed, entitles him to receive from defendant the sum of one dollar for each member of the class to which he belonged, to-wit,

$1,836, sixty days after making proof of his having arrived at the age of seventy years, which has been done.

V.   The proofs having been made, as set out in the agreed state of facts, and no objection having been made to their sufficiency before the expiration of sixty days thereafter, it is now too late to raise any question as to their sufficiency.

VI.   Plaintiff's right of recovery does not depend upon the defendant's ability to collect the assessment provided for in the constitution; for,

1.   The contract is to pay one dollar for each member of Division A, which payment is not made to depend upon the collection of that or any other sum from such members.

2.   Each member is assessed a certain sum upon every death, or upon the members arriving at the age of seventy years, etc., of which sum a portion, together with admission fees, is, by Art. VIII, set apart as a permanent fund to be paid to beneficiaries *before* assessments are collected from survivors, and to make up deficits in assessments.

3.   If there is a want of power to make and collect the assessments, it only goes to the power of plaintiff to enforce the collection of his judgment, but does not affect his right of recovery.

4.   The converse of defendant's claim is the law.   If there is a legal liability, the right to make and collect the assessments follows, of course.

5.   If the contract originally was valid, defendant could not of its own motion destroy the contract by putting it out of its power to provide for its payment by making assessments.

VII.   If it were true that, by issuing the certificate of membership to plaintiff, and others of like tenor, defendant had undertaken the business of life insurance, in violation of law, yet that would not deprive plaintiff of his right of recovery against defendant.   The law in regard to life insurance does not render such contracts void.

VIII.   The defendant did not amend its constitution and by-laws, in respect to the subject-matter of the contract between plaintiff and defendant, at any time before he had arrived at the age of seventy years; because

1. The action of the association at its meeting April 1, 1885, simply transferred certain sections of the constitution to, and made them a part of the by-laws. They still retain their *status* as part of said contract.

2. When so transferred to the by-laws, they could not be amended until the expiration of one month from the time when the proposed amendment had been submitted in writing to a meeting of the board of directors.

3. The said sections of the constitution became a part of the by-laws on the first day of April, A. D. 1885; the alleged amendments were made April 21st, A. D. 1885, less than one month from the time when the same came under the jurisdiction of the board.

IX. But even if the constitution and by-laws of defendant had been changed by the action of the association or its board of directors, yet, without the consent of plaintiff, such change could not abrogate the contract between him and defendant.

X. The provisions of the constitution and by-laws of defendant having suffered no change, except a transfer of certain sections from the former to the latter, the standing of plaintiff in the association is the same it has been from the beginning; and inasmuch as the constitution and by-laws, and not the certificate of membership, fix the *status* of membership, all new members admitted to the class to which plaintiff belongs occupy the same footing with him. The new form of certificate, issued after the controversy with the Auditor, being inconsistent and in conflict with the provisions of the constitution and by-laws, can not deprive plaintiff of any of his rights, nor can it exempt such new members from assessments to pay plaintiff's claim, and they are bound by the provisions of the constitution and by-laws until lawfully changed, repealed or abolished, notwithstanding the form of their certificate.

XI. While it may be true that defendant, at the time of plaintiff's becoming a member thereof, was not an insurance company, as defined by Sec. 31, Chap. 32, R. S., it is equally true it was not a life insurance company so as to bring it within the provisions, or subject it to the penalties of the Act of March 21, 1869, entitled "An act to organize and regulate

the business of life insurance" still in force. Nor is it a company organized under the Act of June 18, 1883, in regard to mutual benefit associations. Its purpose was a lawful one, and its constitution and by-laws contravened no law or constitution of this State or of the United States. Its general purpose is declared in its application for license. The method of accomplishing that purpose is set forth in the constitution and by-laws. It is not foreign to that purpose to make the benefit payable to the member himself when he shall have arrived at the age of seventy years. The action of the Auditor was therefore uncalled for and unauthorized by law.

XII. The fact that defendant has never exercised the power of paying or collecting assessments to be paid to living members is of no force, from the fact that none have ever been called for, as appears in proof.

XIII. The fact that plaintiff has continued to pay his assessments since notified of the action of the society, or its board of trustees, in regard to the alleged changes in the constitution and by-laws, can work him no harm. Defendant continued to assess him. He was bound to pay the assessments in order to preserve his membership, for the benefit of his wife and children, in case he should die before arriving at seventy years of age.

That the said parties to this agreement would submit the following points of law at issue between them on the foregoing facts, on the part of the defendant corporation.

That the certificate of membership and the agreement contained therein, so far as the same provides for the payment of any sum to the holder, or member of said society, when he shall arrive at the age of seventy years, or after he shall have been a member for twenty-five consecutive years, is void, of no effect, and can not be enforced against this defendant corporation for the following reasons:

I. That the said corporation, as shown by exhibit A, issued by the Secretary of State, possesses only the power to pay benefits to, and give financial aid to the widows, orphans and heirs or devisees of deceased members, and no other objects.

II. That the board of directors in making such contracts

exceeded their power and duties, and could not by such act bind the defendant, of which extent of their power the plaintiff was bound to take notice.

III. That should the present board of directors attempt to make an assessment to pay said plaintiff his claim, it would be in violation of law and would subject them to punishment under the law, and would afford ground for proceeding to cancel and annul their chartered rights.

IV. That said defendant corporation, before said plaintiff had arrived at the age of seventy years, had taken the necessary steps and had fully amended their constitution and by-laws so as to strike out all that part of the same which required assessments to be made and paid, as claimed by plaintiff, of which he had notice.

V. That any rights which the plaintiff might have (if any) would be against the board of directors and officers who issued such certificates exceeding their powers, and not against the defendant corporation, and this defendant is not estopped from setting up such want of authority exercised by its officers.

VI. That the present board of directors, or the officers of this association, can in no case be required to carry into effect an illegal contract made by their predecessors in office, more especially when by so doing they would subject themselves to penalties for a violation of law.

VII. That this is a corporation in which all its officers and members are governed and controlled by its constitution and by-laws, and such changes and amendments as may be made in them from time to time; and that the certificate of the plaintiff was received by him subject to such changes as might be made to the same, or it was affected by any such change so made.

VIII. That the amendments made in the constitution of the defendant corporation took from its officers and board of directors the power to make such assessments as demanded by plaintiff, and in that regard changed the certificate of the plaintiff; that he, the plaintiff, was as well bound by such action as the society or its officers.

IX. That in the form of action brought by the plaintiff in

this cause, the court possesses no power by which it can authorize said defendant corporation or its officers to make any assessment upon its members to pay plaintiff's claim, nor does said court possess the power to compel members of the division which plaintiff is in, to pay such assessments to said defendant, or its officers, that they might comply with an order of the court, should such be made.

X.   That only 597 members of said Division A, of which the plaintiff was a member, had or held certificates containing the clause upon which the plaintiff claims at the time he arrived at the age of seventy years, and all others of said Division A are in no wise a party to such contract, or in any degree bound thereby, and never were.

XI.   That under the law, the carrying the risk by the defendant corporation, of the plaintiff, has been a sufficient consideration for all assessments by him paid, and should he continue to pay assessments until his death, the defendant will be liable to pay plaintiff's heirs and executors the amount to which his legal representatives will be entitled, under the said certificate at the time of plaintiff's death.

Messrs. ABBOTT & BENSON, for appellant.

There can be no question that, in making the certificate to appellee to pay him benefits during his lifetime, appellant exceeded its power, under its license and under the law, and it may plead this want of power.   Dartmouth College v. Woodman, 4 Wheat. 518; Hood v. N. Y. & N. H. R. R., 22 Conn. 502; 1 Parsons on Contracts, p. 141; Green's Brice's Ultra Vires, 744; Bradley v. Ballard, 55 Ill. 413.

The court makes this restriction to the plea of *ultra vires.* When such corporation deals with a stranger, who had no knowledge of its power, or when a corporation gets money and refuses to return it, or when the contract is completely executed and all rights are lost, unless such contract is carried into effect and no other rights exist, then they say it is carrying the doctrine of *ultra vires* too far, or, where it would be an act of dishonesty, then such corporation would be estopped from setting up such plea.   8 Ill. App. 350; Brown v. Mortgage Co., 110 Ill. 235; Darst v. Gale, 83 Ill. 136.

Canton Masonic Mut. Ben. Society v. Rockhold.

Appellee being a member of said society is charged with full knowledge and notice of all the powers of appellant, and of its want of power to pay benefits to living members. Brandt v. Fulton Bank, 3 Wend. 583; Mutual Benefit Ass'n v. Hoyt, 46 Mich. 473.

The last case cited fully supports our view that this certificate so far as it requires the payment to appellee while living, is void, and contrary to public policy.

Messrs. McCulloch & McCulloch, for appellee.

The statute under which appellant is organized does not require payment of the money to the beneficiaries therein named. It does not point out the channels through which the intended benefit shall reach them. No reason is perceived why that benefit may not be made as effectual by lifting a present burden from their shoulders, in the lifetime of an aged member, as by compensating them after his death.

Our Supreme Court has gone much further than this in holding that, under a provision in favor of legatees, the member may, by a provision in the certificate of membership, have it made payable to a total stranger. Bloomington Mut. Ben. Ass'n v. Blue, 120 Ill. 121.

The statutes show that it was the legislative intent to exclude from the operation of the insurance laws all corporations operating under the assessment plan, where there was neither capital stock, dividends of profits nor any other payment of money by way of profits. It does not follow that because certain characteristics are enumerated, that all companies not possessing the same are necessarily insurance companies within the meaning of the statute.

At the time of the enactment of this statute, there were probably in existence certain voluntary associations for mutual benefit, having the characteristics therein mentioned, and it being doubtful whether or not they might come under the exception relating to insurance, they were specifically excluded from the exception. It does not follow, however, that because they were specifically excepted, others of a like character, but not coming exactly within that definition, were to be

treated as insurance companies. The whole tenor of our legislation upon that subject seems to point to the intention to treat all these mutual benefit assessment associations as not coming within the insurance exception. If there could have been any doubt as to the construction of the Act of 1872, all room for such doubt was effectually swept away by the Act of 1883.

BAKER, J. The act approved March 26, 1869, in relation to life insurance companies, provides that before any life insurance company goes into operation under the laws of this State, a guarantee capital of at least $100,000 shall be paid in money and invested in such stocks and securities as are required by said act, and that until the Auditor of Public Accounts shall examine the capital and give a certificate authorizing such company to issue policies, no policy shall be issued. It is a part of the agreed case that the appellant corporation is not an insurance company, as defined by the statute, but that it is a corporation organized under the laws of the State relating to corporations not for pecuniary profit, its object being to give financial aid and benefit to the widows, orphans and heirs or devisees of deceased members. It appears from "Exhibit A," which is expressly made a part of the agreed case, that the certificate which was filed by the proposed incorporators in the office of the Secretary of State, on the 30th day of March, 1874, stated that the business and object of the society, which was to be known as the " Canton Masonic Mutual Benevolent Society," should be to give financial aid and benefit to the widows, orphans and heirs or devisees of deceased members. It also appears from said exhibit that the certificate of the Secretary of State declaring the legal organization of the society was based upon the certificate of the incorporators, so filed, and upon the provisions of the act concerning corporations, approved April 18, 1872, and in force July 1, 1872. Prior to the date of the certificate of the incorporators and its filing, Sec. 31 of the said act concerning corporations was amended by an act approved March 28, 1874, and in force, under an emergency clause, from and after March 28, 1874.

The amendment so made provided that, "associations and societies which are intended to benefit the widows, orphans, heirs and devisees of deceased members thereof, and where no annual dues or premiums are required, and where the members shall receive no money as profit or otherwise, shall not be deemed insurance companies." It is manifest that the society in question is organized under the provisions of this amendatory act and as a society not for the pecuniary profit of its members. In Commercial League v. The People, 90 Ill. 166, it is held that an association organized under said amendatory clause is not a life insurance company within the meaning of the statute relating to life insurance companies.

In respect to associations and societies, whose charter is the amendatory and last clause of Sec. 31, Chap. 32 of the Revised Statutes of 1874, the language of the clause is mandatory, that "the members shall receive no money, as profit or otherwise." In Commercial League v. The People, *supra*, it is held the word "profit" means the gain made upon any business or investment. If appellee, as a member of the appellant society, has invested in and paid to the association the sum of $165, and is entitled to receive and recover from it the sum of $1,836, in consideration of such investment, then it would seem necessarily to follow that he, as such member, is allowed to receive money as a profit upon his investment.

It must be considered that the clause of the statute under consideration absolutely prohibits the members of societies organized under said clause from receiving money or profits from the association. The corporators elected to avail themselves of the privilege given them by the statute of forming themselves into a society not for pecuniary profit to themselves, and were by the State, upon that consideration, freed from the heavy burdens imposed by law upon life insurance companies. To permit the society to contract to pay to one of its members upon his arriving at seventy years of age, or after he has been a member in good standing for twenty-five consecutive years, a sum of money as profits upon his investments in the society, would be in fraud of the charter upon

which it depends for existence, would virtually nullify and abrogate the wholesome statutes enacted for the purpose of regulating the business of life insurance companies, would set at naught the legislative intent, and be in conflict with the public policy of the State. Appellee is not a stranger to the corporation, but is himself a member of the society, and as such is chargeable with full knowledge and notice of its charter powers and of the requirements and prohibitions of the statute under which it is organized.

The general rule is that an agreement to do a thing contrary to law or public policy can be enforced by neither party against the other. When a statute forbids a particular business generally, or to certain corporations, then any contract made in such business in violation of the statute or by a corporation prohibited therefrom is void. 2 Parsons on Cont. 186; Bishop on Cont. (Enlarged Ed.), Secs. 547, 549 and 627. In Penn v. Bornman, 102 Ill. 523, the provision in the bank charter was that "no director of said corporation shall be indebted to said corporation, either directly or indirectly, or individually, at any time, to an amount greater than seventy-five per centum of the capital stock held by such director, in good faith as his own," and it was held that a director could not enter into a valid contract with the bank, as guarantor or indorser, without regard to his ownership of stock and in violation of such provision, and that no recovery could be had by the bank under such a contract against him or his estate; and it was further held that the prohibition of the charter applied to the bank as well as to the directors. See also, the numerous authorities cited in the opinion of the court in Penn v. Bornman.

In the case just cited, the court said, in substance, that they found no evidence of overreaching, fraud or bad faith on the part of Bornman, but only found the simple fact that he, like the bank, was a party to an agreement prohibited by its charter; and that if this of itself affords matter of estoppel against the defense of illegality in the contract, then it is manifest such a defense could not successfully be interposed in any case where the agreement is simply prohibited by statute,

and that to so hold would, under the pretense of construction, be, in effect, abrogating the provisions of the charter by judicial legislation. These remarks seem to apply, with equal or greater force, to the case we now have in hand.

The provisions of the Acts of May 22, 1883, and June 18, 1883, have no bearing upon the present controversy. Those acts have reference only to contracts for indemnity against accident or permanent disability. The contract here involved is not for indemnity against either accident or permanent disability, and there is nothing in the case to either indicate or suggest that appellee has either met with an accident or is suffering from a permanent disability.

The present case is not governed by and is easily distinguished from the case of Benefit Association v. Blue, 120 Ill. 121, relied upon by appellee. There, the statute did not forbid the contract which was then under consideration; here, the statute does forbid the contract now in question. There the court said: "It is contended that all persons not named in the act are prohibited from becoming beneficiaries. It will be observed that the contract involved is not absolutely prohibited by statute. All that can properly be claimed is, that it was not expressly authorized by the statute." Here, the charter of the appellant society contains an absolute prohibition against the character of benefits sought to be recovered, and the language of the statute is "the members shall receive no money, as profit or otherwise."

In our opinion, the members of the Canton Masonic Mutual Benevolent Society, as well as the society itself, were bound to know that a contract, such as that here in suit, was invalid so far as it provided for the payment of a sum or sums of money to a member of the association upon his arrival at the age of seventy years, or after he had been a member in good standing for twenty-five consecutive years, and was binding only in respect to the benefits secured thereby to the widow, orphans, heirs and devisees of such member, or other person entitled thereto after his decease.

Our conclusion is, that the judgment of the Circuit Court was erroneous, and it is reversed.

*Judgment reversed.*