CHARLES W. ROCKHOLD

*v.*

THE CANTON MASONIC MUTUAL BENEVOLENT SOCIETY.

*Filed at Ottawa June 15, 1889.*

1. CORPORATIONS—*ascertaining their powers—the mode—under a general law or a special charter*.  In ascertaining the scope of the powers of corporations, the only difference between one organized under a general law and one created by special statute is, that in the former the court will look to the certificate of the promoters, while in the latter to the special statute.  The rule, however, for construing the instruments is necessarily the same.

2. SAME—*what powers may be exercised*.  In both kinds of private corporations their powers are such as are specifically enumerated, and such others as are incidental or necessary to carry the express powers into effect.  They may not exercise any other powers than these.

3. LIFE INSURANCE—BENEFIT SOCIETIES—*who may be a beneficiary—of an endowment to a member*.  A benevolent society organized under the laws of this State for the purpose of giving "financial aid and benefit to the widows, orphans and heirs or devisees of deceased members," has no power to issue a certificate of membership payable to a member

upon his arriving at a certain specified age, or after he has been a member in good standing for a given number of years, and no recovery can be had by a member on such a certificate.

4. An undertaking of such a society to pay a given sum of money to a member upon his arriving at a certain age, or after he has been a member in good standing for a specified time, is not intended to benefit the widow, orphans, heirs and devisees of a deceased member. In such a contract the member himself is the sole beneficiary.

5. An undertaking intended to benefit the widow, orphans, heirs and devisees of a deceased member, must be an undertaking to pay, after the death of the member, directly to the widow, orphans, heirs or devisees of such deceased member, or at least in such way that they shall be the immediate recipients of the use of the sum to be paid. The word "benefit," in a certificate, will be assumed to have been used in its legal sense,—that of the direct and absolute enjoyment of the sum to be paid, or of its use.

6. SAME—*contract of insurance—as distinguished from the usual benefit certificate.* A certificate of membership issued by a benevolent society, whereby the society undertakes, in view of the age and condition of health of the member, in consideration of a present payment and of the agreement to pay other contingent sums in the future by him, to pay a sum to him, or to his widow or heirs, etc., contingent as to time, upon the duration of his life, is, aside from all statutory definitions and classifications, a contract of life insurance.

7. And it has been held, that such an undertaking is none the less a contract of insurance because the amount to be paid by the corporation is not a gross sum, but a sum graduated by the number of members holding similar contracts; nor because a portion of the premium is to be paid upon the uncertain periods of the death of such members; nor because, in case of non-payment of assessments by members, the contract provides no means of enforcing payment thereof; nor because it is to pay certain sums of money as endowments to living members.

8. SAME—*act of 1869—applies to what classes of life insurance companies.* The provisions of the act of 1869, relating to life insurance companies, which provide the steps to be taken by such companies as conditions to their taking risks and issuing policies, make no exception as to any class of life insurance companies, but that act relates to mutual as well as stock companies, and was clearly intended to apply to all life insurance companies.

9. SAME—*former decisions.* It was not held in the cases of *Commercial League* v. *The People,* 90 Ill. 166, and *Martin* v. *Stubbings,* 126 id. 387, that the act of 1869, in relation to life insurance companies, had no application to beneficiary certificates like the one in this case. It was not found necessary, in either of those cases, to consider the effect of

the act of 1869, as it was before that act was affected by the act of 1872, as amended by the act of 1874; but those cases were considered solely with reference to the act of 1869, as affected by the act of 1872, as amended.

10. SAME—*act of 1872—its effect upon the act of 1869—and of the act of 1874.* The act of 1872 did not change the law of 1869, which prohibited all life insurance companies from transacting business in this State without complying with the requirements of the act of 1869. But the amendatory act of 1874 authorized the issue of certificates by benevolent societies, to the extent that they were for the benefit of the widows, orphans, heirs and devisees of deceased members, but left the law precisely as it was before, with reference to the clause obligating payment to be made to a member in his lifetime, upon arriving at the age of seventy years, or after having been a member in good standing for twenty-five years.

11. SAME—*act of 1883—as enlarging the powers of then existing-companies.* Section 9 of the act to provide for the organization and management of corporations, associations, etc., for the purpose of furnishing life indemnity or pecuniary benefit to widows, orphans, heirs, relatives and devisees of deceased members, accident or permanent disability to members thereof, approved June 18, 1883, does not extend the powers of the then existing corporations, or make valid acts done by them beyond the scope of their powers.

12. That act simply professes to exempt the corporations or societies created for the enumerated purposes, from the operation of the insurance laws, and to require them to comply with the provisions of that act, and it is prospective, only, in its operation.

13. CONSTRUCTION OF STATUTES—*legislative construction—whether binding on the courts.* The legislature, even by an act expository in form, can not instruct the judiciary how to construe statutes, any more than the judiciary can instruct the legislature what statutes it shall enact.

14. SAME—*contemporaneous enactments—as aiding in construction.* In determining the meaning of obscure clauses in statutes it may often be important to look into other enactments by the same legislature, having reference to the same subject matter, as showing the sense in which the language was evidently employed; but the enactments of a subsequent legislature, composed of different members, have no more value in that respect than the acts of any other department of government.

15. The fact that the legislature may have, by subsequent acts, manifested a willingness to restrict the operation of the general Insurance law in behalf of benevolent societies, from time to time, and to broaden correspondingly the scope of benevolent societies, can not be regarded

as an indication of the meaning of prior legislation on the same subject. What was originally within the operation of the insurance laws remains there until withdrawn therefrom by subsequent legislation, and such subsequent legislative act must clearly show what is intended to be withdrawn from the operation of prior acts.

APPEAL from the Appellate Court for the Second District ;— heard in that court on appeal from the Circuit Court of Peoria county; the Hon. T. M. SHAW, Judge, presiding.

This was an action on a certificate of the Canton Mutual Benevolent Society, on the following agreed facts :

"*First*—That said defendant is a corporation organized under the laws of the State of Illinois relating to corporations not for pecuniary profit, and not an insurance company, as defined by the statute under which the said company was organized, its object being to give financial aid and benefit to the widows, orphans and heirs or devisees of deceased members, as set forth in the certificate of organization issued by the Secretary of State, with the accompanying statement of the particular business and objects for which it was formed, (a copy of which is hereto attached, and marked 'Exhibit A,' and made a part of this agreement,) said certificate being dated March 30, 1874, and on the 9th day of April, 1874, adopted a constitution and by-laws,—a copy of which is hereto attached, marked 'Exhibit B,' and made a part of this agreement; and said defendant corporation commenced to do business, and continued up to the present time.

"*Second*—That the constitution of said corporation contained in article 7, section 1, 'that the board of directors shall pay to the members holding certificates, a sum equal to one ($1.00) dollar for every member of the division to which he shall belong, upon such surviving member arriving at the age of seventy (70) years, or after he shall have been a member for twenty-five consecutive years;' and that article 6, section 1, of the by-laws of said defendant corporation, requires

the board of directors of said corporation to furnish all members of said society with a certificate containing the agreement on the part of the society and its members,—which said article 7 and article 6 are to be found in said 'Exhibit B,' hereto attached.

"*Third*—That, to-wit, on the 24th day of May, A. D. 1875, the plaintiff became a member, and a certificate of membership in said society was issued to the said plaintiff, containing the provisions of said article 7 of the constitution of said society to pay benefit to said plaintiff on his arriving at the age of seventy years,—a copy of which certificate is hereto attached and made a part of this agreement, and marked 'Exhibit C.'

"*Fourth*—That said plaintiff has, since the time of receiving said certificate, paid all assessments, Nos. 1 to 51 inclusive, such assessments amounting in the aggregate to $165.60, the same being all assessments for which said plaintiff was liable by virtue of holding said certificate and being a member of said society; but in no case has said defendant corporation exercised the power of paying or collecting benefits to be paid to living members of said society, and in no case has the plaintiff been required by said society to pay any such assessments, the defendant believing it had no power to make any such assessments.

"*Fifth*—Said plaintiff, to-wit, on the 25th day of December, A. D. 1886, arrived at the age of seventy years, and that thereupon he served notice upon said corporation defendant, making proof that he had arrived at the age of seventy years, and demanded that he be paid the amount due him by the terms of his certificate,—a copy of which notice is hereto attached, marked 'Exhibit F.' No objection has been made to said notice. That Division A, of which he was a member, then contained 1836 members, but only 597 members of Division A held certificates containing said clause to pay benefits to living members, and 1239 of said members of Division A held certificates in which only benefits were to be paid to their

widows, orphans and heirs or devisees of said deceased member,—as per exhibit hereto attached, marked 'Exhibit G.' And that said president and said officers of said society, or its board of directors, have neglected and refused, and now neglect and refuse, to make such assessment, or to pay said sum equal to the members in said Division A, as aforesaid, or any part thereof.

"*Sixth*—That after notice by the Auditor of the State of Illinois, as set forth in section 7 of this agreement, the secretary of the said defendant corporation, by order of the board of directors, issued and gave notice to each member of said society that the issuing of certificàtes containing the endowment clause, to pay benefits to living members, would be discontinued, and the same stricken out,—a copy of which notice mailed to said plaintiff is hereto attached, marked 'Exhibit H.'

"*Seventh*—The Auditor of the State of Illinois, and *ex-officio* insurance commissioner of said State, notified the officers of the defendant corporation to cease issuing certificates containing provision to pay to living members of said society, and that he, as well as the Attorney General of said State of Illinois, stated, and so informed the officers of the society, that if they or the said society attempted to carry out the provision of said certificate paying living members of said society, they would take steps to arrest and cancel the charter of said society, and prosecute said officers for a violation of law governing such corporations,—which said notice is hereunto attached, and marked 'Exhibit M.'

"*Eighth*—That in consequence of said notice of said Auditor and said Attorney General, as aforesaid, to-wit, on the 21st day of November, A. D. 1881, said society made said change in the form of certificates issued by said society,—a blank form of which is hereto attached, and marked 'Exhibit N.' That after the aforesaid action of said society,  *  *  *  and the issuing of amended form of certificate, the plaintiff has continued to pay assessments that have been since then made,

with other members who have held the amended form of certificate."

The exhibits are as follows:

[*Exhibit A.*]

"STATE OF ILLINOIS, DEPARTMENT OF STATE,
GEO. H. HARLOW, SEC'Y OF STATE.

"*To all to whom these presents shall come—Greeting:*

"WHEREAS, a certificate, duly signed and acknowledged, having been filed in the office of the Secretary of State on the 30th day of March, A. D. 1874, for the organization of the Canton Masonic Mutual Benevolent Society, under and in accordance with the provisions of 'An act concerning corporations,' approved April 18, 1872, and in force July 1, 1872,—a copy of which certificate is hereto attached:

"Now, therefore, I, George H. Harlow, Secretary of State of the State of Illinois, by virtue of the powers and duties vested in me by law, do hereby certify that the said Canton Masonic Mutual Benevolent Society is a legally organized corporation under the laws of this State.

[Seal.]     "In testimony whereof I have hereto set my hand, and caused to be affixed the great seal of State.

"Done at the city of Springfield, this 30th day of March, in the year of our Lord one thousand eight hundred and seventy-four, and of the independence of the United States the ninety-eighth.                    GEO. H. HARLOW,
*Secretary of State.*"

"We, William Parlin, William H. Craig, Arthur Bell, J. C. Brinkerhoff, John Chaffee, James R. McQuaid, Henry H. Clingenpeel, William A. Childs and Henry A. Thompson, of the city of Canton, in the county of Fulton and State of Illinois, and citizens of the United States, do hereby certify that we have associated ourselves for the purpose of forming a society, which shall be known as the 'Canton Masonic Mutual Benevolent

Society,' with its principal office at Canton, Fulton county, Illinois. The business and object of this society shall be to give financial aid and benefit to the widows, orphans and heirs or devisees of deceased members; that the number of its directors shall consist of seven, and the names of the directors for the first year are as follows: William Parlin, William H. Craig, Arthur Bell, J. C. Brinkerhoff, John Chaffee, James R. McQuaid and Henry Clingenpeel.

"Witness our hands and seals, this 30th day of March, A. D. 1874.

|  |  |
|---|---|
| WILLIAM PARLIN, | [Seal.] |
| W. H. CRAIG, | [Seal.] |
| A. BELL, | [Seal.] |
| JOHN CHAFFEE, | [Seal.] |
| J. R. McQUAID, | [Seal.] |
| J. C. BRINKERHOFF, | [Seal.] |
| H. H. CLINGENPEEL, | [Seal.] |
| HENRY A. THOMPSON, | [Seal.] |
| W. A. CHILDS. | [Seal.]" |

To this is appended a certificate of acknowledgment.

### [*Exhibit B.*]

The only portions of the constitution material here are the following:

#### "ARTICLE II.—*Object.*

"Sec. 1. The business and object of this society shall be to give financial aid and benefit to the widows, orphans and heirs or devisees of deceased members.

#### ARTICLE IV.—*Membership.*

"Sec. 1. The society shall be limited to six thousand members, and shall be divided into three divisions. Division A shall be limited to three thousand members, Division B shall be limited to two thousand members, and Division C shall be limited to one thousand members. Members may hold certificates in any or all of the divisions by payment of fees in the divisions to which they belong, Division A to be filled first.

But members may be transferred from a higher to a lower division on payment of fifty cents, and members of Division C may be transferred to Division B by payment of two dollars, or to Division A on payment of four dollars. Members of Division B may be transferred to A on payment of two dollars.

"Sec. 2. The requisite qualification for membership shall be, that the applicant be an affiliated Master Mason in good standing, a resident of the State of Illinois, sound and in good health, and between twenty-one and sixty years of age.

"Sec. 3. Applications for membership shall be made to the officers of the society, and shall be on the printed forms furnished by the society. The application must be accompanied by a fee of five dollars, until the society shall number one thousand members; a fee of seven dollars from one thousand to two thousand members; and a fee of nine dollars from two thousand members to three thousand members; and the certificate of three of the officers of the lodge to which the applicant belongs, as to the truth of the answers given in the application prescribed by the forms of the society.

ARTICLE V.—*Classification of Members.*

"Sec. 1. The members of the society shall be divided into four classes, according to age, those from 21 to 30 years of age constituting the first class; those from 30 to 40 years the second class; those from 40 to 50 years the third class; those from 50 to 60 years the fourth class.

ARTICLE VI.—*Assessments.*

"Sec. 1. Upon the death of a member of the society, or upon his arriving at seventy years of age, or after he has been a member, in good standing, for twenty-five consecutive years, each member shall be assessed, and shall pay to the secretary of the society, a sum according to the class of which he is a member, as follows: Members of the first class, $1.10; members of the second class, $1.15; members of the third class, $1.25; members of the fourth class, $1.80.

ARTICLE VII.—*Benefits.*

"Sec. 1.   Upon the death of a member of the society, or upon his arriving at seventy years of age, or after he has been a member, in good standing, for twenty-five consecutive years, the directors shall pay to the heirs or legal representatives, or to the member himself, a sum equal to one dollar for every member of said society of the division to which he is or was a member, within sixty days after proof of his death, or arriving at legal age to receive it, or having been a member, in good standing, for twenty-five consecutive years.

ARTICLE VIII.—*Permanent Fund.*

"Sec. 1.   A permanent fund shall be raised in the manner following: *First,* from admission fees; *second,* from that portion of the assessments not used for the payment of the benefits or expenses,—which fund shall be invested in United States bonds by the board of directors, and shall be for the following purposes: First, that benefits may be paid to the heirs of deceased members, or beneficiary members, before assessments are collected from survivors; second, to insure stability and perpetuity, to make up the deficit caused by those who fail to pay assessments and for whom benefits have been paid, and to provide for other contingencies that may arise; third, to pay for printing, and all other necessary expenses of management.

"Sec. 2.   Whenever the directors find that the fund is large enough to pay six months' benefits, they shall pay benefits for three months without assessing members who have been in good standing five full years."

The following are the only by-laws deemed pertinent at present:

ARTICLE I.

"Sec. 6.   The medical examiner shall make personal examination of all applications, and shall give, in writing, his opinion of the character of the risk.

29—129 ILL.

Article III.—*Notice of Death.*

"Sec. 1. Upon the death of a member of the society, or of one who has become a beneficiary member, the secretary shall send by mail, to the post office address of each member of the society, a notice, giving the name of the deceased member or the beneficiary member, as the case may be, and the lodge to which he belonged, and the assessment due from each member to whom such notice is sent; or the secretary may employ a suitable person, a Mason, in each town or city where the members reside, who shall act for the secretary in serving the notices, either personally or by mail, which notice so sent or served shall be deemed and taken to be a lawful and sufficient notice for the payment of the assessment so called for and required. Any member failing to pay such assessment within ten days after such notice has been served upon him, shall forfeit his membership in the society, and all benefits therefrom.

Article IV.—*Suspension or Expulsion from Lodge.*

"Sec. 1. Suspension for conduct unbecoming a Mason, or expulsion from his lodge, shall cause expulsion from this society."

[*Exhibit C.*]

"CANTON MASONIC MUTUAL BENEVOLENT SOCIETY.

*Class 4.*          *Age, 58.*          *Division A.*          *No. 188.*

"This certificate of membership witnesseth: That the Canton Masonic Mutual Benevolent Society, in consideration of the representations made to it in the application for membership, and the sum of five dollars to it in hand paid by Charles W. Rockhold, and the sum of one and 80-100 dollars to be paid by the said Charles W. Rockhold within ten days after due notice has been served upon him of the death of a member of this society, or upon his arriving at seventy years of age, or after he has been a member in good standing for twenty-five consecutive years, each member shall be assessed, and shall pay to the secretary of the society, a sum according to the class of which he is a member, do promise and agree to

and with the said Charles W. Rockhold, his heirs, executors, administrators and assigns, well and truly to pay, or cause to be paid, to the said Charles W. Rockhold, or to his wife, if living, if not, to his children or to his legal representatives, the sum of one dollar for each member of Division A, within sixty days after due notice and satisfactory evidence that he is a beneficiary member, or of his death. And it is also understood and agreed, that if the said Charles W. Rockhold shall not pay the assessments herein before named, on or before the time mentioned for payment thereof, or in case the said Charles W. Rockhold shall, without the consent of the society, previously obtained in writing, engage in any military or naval service whatsoever, in time of war or rebellion, this certificate shall be null, void, and of no effect.

"In witness whereof, the said Canton Masonic Mutual Benevolent Society has caused its corporate seal to be hereunto affixed, and these presents to be signed  by its president and secretary, at Canton, in the county of Fulton, and State of Illinois, this 24th day of May, A. D. 1875.

J. C. BRINKERHOFF, *Sec.*          WM. PARLIN, *Pres.*"

"Exhibit F" is a notice in writing, verified by the affidavit of Charles W. Rockhold, that he became of the age of seventy years on the 25th day of December, 1886.

### [*Exhibit G.*]

"Total number of members admitted to membership in Division A, of the Canton Masonic Mutual Benevolent Society, from date of its organization to December 25, A. D. 1887, - - - - - - - - - - 2755

Number of members of same division lost by death during that time, - - - - - - - - - 91

Number of members lost by lapses, same time - 828

Total number members lost up to Dec. 25, 1886, ——— 919

    Actual membership of Division A, Dec. 25, 1886,   1836

"I hereby certify that the above is a true statement of the membership of Division A, of the above named society, December 25, 1886. C. N. HENKLE, *Sec.*"

*[Exhibit H.]*

"OFFICE OF CANTON MASONIC MUT. BENEV. SOCIETY,

CANTON, ILL., *November 23, 1881.*

"A communication received this day from Hon. Chas. P. Swigert, State Auditor, informs us that the law under which this society was organized does not admit of making assessments to pay benefits to surviving members. He therefore directs that we discontinue the issuance of certificates of membership containing that feature of the society's plan. We have accordingly stricken out that portion which provides for the payment of benefits to members 'on arriving at the age of seventy years, or having been members, in good standing, for twenty-five consecutive years.' Should we find, after further investigation, that we can lawfully resume the use of this feature, we will take up this certificate and issue one providing for the payment of benefits, on terms as stated in words erased from the certificate attached hereto.

H. C. BOLTON, *Vice-Pres.* C. N. HENKLE, *Sec.*"

"Exhibit K" is a report of a meeting of the Canton Mutual Benevolent Society held on the 1st of April, 1885, in regard to amending the constitution and by-laws pursuant to a resolution of the society at the annual meeting in 1883.

"Exhibit L" is the amended constitution and by-laws.

"Exhibit M" is a communication from the Auditor of State, dated November 21, 1881, notifying the society that it is not authorized to pay to persons on account of having arrived at seventy years of age, or having been for twenty-five years a member of the society, in good standing, etc.

Judgment was rendered for the plaintiff, but on appeal to the Appellate Court for the Second District this judgment was

reversed. (See *Canton Mutual Benevolent Society* v. *Rockhold*, 26 App. Ct. 141.) The present appeal is from that judgment.

Messrs. McCULLOCH & McCULLOCH, for the appellant:

The defendant organization comes fully within the provisions of the statute under which it was created. Rev. Stat. chap. 32, sec. 31; *Commercial League* v. *People*, 90 Ill. 166.

The contract was not for the pecuniary profit of the plaintiff, as he paid the *quid pro quo*, and violates no law of the State. *Benefit Association* v. *Blue*, 120 Ill. 121.

The statute providing that no life insurance company shall go into operation until it has done certain things, does not apply to the defendant, for the reason it is declared not to be an insurance company.

After having received plaintiff's money, and he having fully performed the contract, the defendant can not now plead that the contract was beyond its power to make. *Benefit Association* v. *Blue*, 120 Ill. 121; *Alexander* v. *Tolleston Club*, 110 id. 65; *Bradley* v. *Ballard*, 55 id. 413; *Barnes* v. *Suddard*, 117 id. 237; Green's Brice on Ultra Vires, 41; *Taylor* v. *Railway Co.* 1 L. R. Ex. 356; L. R. 4 H. L. Cases, 620; 4 H. & C. 409; *Railway Co.* v. *Hawkes*, 5 H. L. Cases, 381; *Exchange Co.* v. *Drew*, 2 Macq. 103; *Bargate* v. *Sheuage*, 5 H. L. Cases, 297; *Riche* v. *Railway Co.* L. R. Exch. 224.

The change in the constitution and by-laws of the society can not change plaintiff's right under the contract made before the change. Bliss on Life Insurance, p. 734, sec. 463; *Poultney* v. *Bachman*, 62 How. Pr. 466; *Morrison* v. *Insurance Co.* 59 Wis. 162; *Insurance Co.* v. *Connor*, 17 Pa. 136; *Beadle* v. *Insurance Co.* 3 Hill, 161; *Insurance Co.* v. *Harvey*, 45 N. H. 292; *Insurance Co.* v. *Butler*, 34 Metc. 451.

Mr. H. R. BENSON, and Mr. D. ABBOTT, for the appellee:

The defendant, not being an insurance company, had no power, under the laws of the State, to make by-laws to pay

living members, or, in other words, no member of the society could rightfully receive money, as profit or otherwise, from the society. Executory contracts made by a corporation beyond its powers can not be enforced. *Bradley* v. *Ballard*, 55 Ill. 413.

Then, if it is true that appellee had no right to make a contract for endowment insurance, and that the same is illegal, it can not be enforced by either party against the other. Bishop on Contracts, sec. 627, p. 245.

But let us assume that, as appellee says, he paid his assessments made for death indemnity to the members of the appellant society under the belief that the law would give him endowment indemnity. Does that help him? Certainly not; for to pay money under a mistake as to the law does not entitle one to recover. Bishop on Contracts, sec. 631.

Assuming that it was unlawful for appellant to collect and receive from the appellee the assessments paid by him, under the circumstances, the most favorable construction that could be put upon such transaction would be that appellant be required to pay back the amount so unlawfully collected. Bishop on Contracts, sec. 628, p. 631.

As the law under which the appellant society was organized gave no power to make by-laws to pay benefits to living members, its directors could make no by-laws in conflict with the provisions of the statute, and all provisions of the by-laws made to pay benefits to living members, and the clause in the certificates issued to members to that effect, were void; and the appellee can have no right to recover on that clause of his certificate. Corporation act, chap. 32, sec. 31; *People ex rel.* v. *Manufacturing Co.* 82 Ill. 457.

The business and object of the society were to give financial aid and benefits to the widows, orphans, heirs and devisees of deceased members. It did not include, as it might have done, the disability clause; therefore the agreement to pay plaintiff, in his certificate, any sum of money, at any time or manner,

was clearly in excess of its power as a corporation. It could only contract to pay benefits to widows, orphans, and heirs or devisees of deceased members.

Nor did the fact that in their constitution, in article 7, agreeing to pay any of its members any sum of money upon his arrival at the age of seventy years, or after he had been a member for twenty-five consecutive years, in any way authorize the society in the making of a valid contract to carry out its provisions, and in that respect it was clearly in excess of its chartered rights and powers, and it may plead its want of such power. *Dartmouth College* v. *Woodman,* 4 Wheat. 518; *Hood* v. *Railroad Co.* 22 Conn. 502; 1 Parsons on Contracts, 141.

The plaintiff, being a member of the society, is charged with full knowledge and notice of all the powers of the defendant, and of. its want of power to pay benefits to living members. *Brant* v. *Fulton Bank,* 3 Wend. 583; *Mutual Benefit Association* v. *Hoyt,* 46 Mich. 473; *Penn* v. *Bornman,* 102 Ill. 523.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

Appellee assumes to be incorporated under and by virtue of the provisions of sections 29, 30 and 31, of chapter 32, of the Revised Statutes of 1874, which provide for the creation of "corporations not for pecuniary profit." "The particular business and objects" of the corporation, as declared in the certificate of the promoters filed in the office of the Secretary of State, are, "to give financial aid and benefit to the widows, orphans and heirs or devisees of deceased members," and the certificate of incorporation is a license only for "the particular business and objects" enumerated in the certificate of the promoters. (See statute, *ubi supra.*) The only difference that occurs to us, between a corporation organized under a general law, and one created by a special statute, material to be here considered, is, that in the former we look to the certificate of

the promoters, while in the latter we look to the special statute, to ascertain the scope of the powers of the corporation. The rule for construing the instruments must necessarily be the same, namely, the powers specifically enumerated, and such other powers as are incidental or necessary to carry those powers into effect, but none others, may be exercised by the corporation. *Caldwell* v. *City of Alton*, 33 Ill. 416; *Marsh* v. *Astoria Lodge*, 27 id. 421; *Trustees* v. *McConnel*, 12 id. 140; *Metropolitan Bank* v. *Godfrey*, 23 id. 579; *Chicago* v. *Rumpff*, 45 id. 90; *The People* v. *Chicago Board of Trade*, id. 112; Bacon on Benefit Societies and Life Insurance, sec. 47.

The certificate here in suit assumes to bind the corporation to the payment to Charles W. Rockhold, upon his arriving at seventy years of age, or after he has been a member of this society, in good standing, for twenty-five consecutive years, or, upon his death, to his wife, if living, if not, to his children or to his legal representatives, the sum of one dollar for each member of Division A, within sixty days after due notice, etc. It is plain that an undertaking to pay a given sum of money to a member of a society upon his arriving at seventy years of age, or after he has been a member of the society, in good standing, for twenty-five consecutive years, is not "intended to benefit the widow, orphans, heirs and devisees of a deceased member." Such an undertaking is to pay in the lifetime of the member, and to him alone, and he is thus the sole beneficiary. But an undertaking "intended to benefit the widows, orphans, heirs and devisees of deceased members," must be an undertaking to pay, after the death of the member, directly to the widow, orphans, heirs or devisees of such deceased member, or, at all events, in such way that they shall be the immediate recipients of the use of the sum to be paid, for we must assume that the word "benefit" is used in its legal sense,—that of the direct and absolute enjoyment of the sum to be paid, or of its use. In so far, therefore, as this certificate assumes to bind the society to the payment to Charles W. Rockhold of the sum

named upon his arriving at seventy years of age, or after he has been a member of the society, in good standing, for twenty-five consecutive years, it is beyond the power conferred by the charter of the corporation. *The State of Ohio ex rel.* v. *Central O. M. B. Association*, 29 Ohio St. 399; *The People ex rel.* v. *Welton*, 46 N. Y. 477; Bacon on Benefit Societies and Life Insurance, sec. 46; Niblack on Mutual Benefit Societies, sec. 3.

But counsel for appellant contend, that, conceding the law to be thus, contracting to pay a sum to a member on his arriving at seventy years of age, or after he has been a member of the society, in good standing, for twenty-five consecutive years, is neither immoral in itself nor prohibited by any statute, and therefore that, the contract having been fully executed by appellant by paying all the assessments made upon him, appellee is estopped to plead its want of authority to thus contract. It may be conceded, that, apart from any question of public policy, there is nothing immoral in the mere act of contracting to pay money to appellant upon the conditions expressed in the certificate; but it can not be conceded that thus contracting is not within any statutory prohibition. In the solution of this question it will be necessary to determine, first, is this undertaking, apart from arbitrary statutory definition or classification, life insurance; second, if life insurance, is it such as was originally within the contemplation of the act of March 26, 1869, in relation to life insurance; third, if such as was originally within the contemplation of that act, has it been excepted from the effect of that act by anything in the act of April 18, 1872, in relation to the formation of corporations not for pecuniary profit, either before or since its amendment by the act of March 28, 1874.

*First*—That the undertaking evidenced by this certificate is one of insurance, if considered apart from all arbitrary statutory classifications or definitions, can not be seriously questioned. It is an undertaking by a society, in view of the ascertained age and condition of health of one of its members,

in consideration of a present payment of a sum of money and of the undertaking to pay other contingent sums in the future by him, to pay a sum to him, or to his widow or heirs, etc., contingent as to time, upon the duration of his life; and it has been held that the undertaking is not the less a contract of insurance because the amount to be paid by the corporation is not a gross sum, but a sum graduated by the number of members holding similar contracts; nor because a portion of the premium is to be paid upon the uncertain periods of the deaths of such members; nor because, in case of non-payment of assessments by members, the contract provides no means of enforcing payment thereof. (*Commonwealth* v. *Wetherbee*, 105 Mass. 160; *The State* v. *Citizens' Benefit Association*, 6 Mo. App. 163.) Nor is it any the less a contract of insurance because it is to pay certain sums of money as endowments to living members. *Endowment and Benevolent Association* v. *The State*, 35 Kan. 253; *The State* v. *Mutual Aid Association*, id. 51; *The State* v. *Farmers' Benevolent Association*, 18 Neb. 281; *The State* v. *M. Ex. Society*, 72 Mo. 146; *Briggs* v. *McCullough*, 36 Cal. 542; Bacon on Benevolent Societies and Life Insurance, sec. 17-167; Niblack on Mutual Benefit Societies, secs. 163, 164.

*Second*—The act of 1869 makes no exception, in any of its provisions, as to any class of life insurance. (See Laws of 1869, p. 142.) Its title is, "An act to organize and regulate the business of life insurance," and we are unable to conceive of language more comprehensive as to the general subject than that employed in the several sections, where, if exceptions or limitations had been intended, they would have been expressed. Thus we find this language in section 1: "That before any life insurance company goes into operation, under the laws of this State, a guarantee capital of $100,000 shall be paid in money, and invested," etc. In section 2: "No policy shall be issued until a certificate from the Auditor has been obtained authorizing such company to issue policies." In section 5:

"Every life insurance company incorporated in this State shall, on or before the 1st of March in each year, transmit to the Auditor, and file in his office, a statement of its business standing," etc.   In sections 3 and 10 are imposed like restrictions upon all foreign companies doing business in this State.   It can not be said that mutual companies were not in the mind of the legislature at the time of this enactment, because it is provided in section 4 that "the subscribers or holders of guarantee stock in a life insurance company organized on the mutual or stock and mutual plan, shall choose the first board of directors, and at all subsequent elections they shall choose one-half of the directors and the holders of mutual policies the other half, until the redemption of the guarantee stock, when the holders of the mutual policies shall elect all of the directors."   And in. section 14, that "life insurance companies doing business in this State which do business upon the principle of mutual insurance, or the members of which are entitled to share in the surplus funds thereof, may make distribution of such surplus," etc.   And so it is clear and beyond dispute, that when the language quoted from the sections *supra* was employed, it was intended to include "mutual" as well as "stock" companies.

But, counsel urge, the statute speaks of "valued policies," the "net value of policies," and of the "valuation of policies," whereas certificates like that in suit are incapable of valuation, and therefore such insurance could not have been within contemplation.   To this it may be answered, first, that if the legislature evince, by the language employed, as we think they do, that it was clearly intended to prohibit all life insurance except such as shall be in conformity with its provisions, it can not be of the slightest significance that there was some form of insurance with which the members of that body were not familiar, and to which many of the restrictions are practically inapplicable.   Such a consideration addresses itself to the legislature, alone, as a reason why the act should be

amended, excluding from its provisions the general prohibition. Second, it is said in Bacon on Benefit Societies and Life Insurance, section 166: "Regarding the certificate of membership as a contract similar to a life insurance policy, it is what is termed a 'valued policy.'" And, quoting from *Lycoming Insurance Co.* v. *Mitchell,* 48 Pa. St. 372, that such a policy "is not to be understood to be one which estimates the value of the property insured, merely, but which values the loss, and is equivalent to an assessment of damages in the event of a loss," the author adds: "In this sense all policies of life insurance, or benefit certificates, are valued policies, for all specify the amount which the insurer is to pay, without question as to the money value of the interest destroyed. And the policy is not to be considered as open as to the amount, because the amount payable is to be determined by the number of members of a certain class or of the society."

A final contention of counsel, to be noticed under this point, is, that we held in *Commercial League* v. *The People,* 90 Ill. 166, and *Martin* v. *Stubbings,* 126 id. 387, that the act of 1869, in relation to life insurance, had no application to beneficiary certificates like the present. This is a misapprehension of what was decided in those cases. We did not find it necessary, in either of those cases, to consider the effect of the act of 1869 in relation to life insurance as it was before it was affected by the act of 1872, as amended by the act of 1874, but the cases were considered solely with reference to the act as it was, as affected by the act of 1872 as thus amended. It was in the first named of those cases conceded that the appellant was an insurance company, "in the general and enlarged sense of the term," but it was said: "If appellant was to be regarded as an insurance company, within the meaning of the act of 1869, the act of 1874 has so amended the act of 1869 that companies organized and doing business, as was appellant, do not, since the amendment, fall within the act of 1869." In the last named case, what is said in reference to whether a certificate

of membership in a mutual benevolent society is a policy of insurance, is predicated upon the statutes as affected by the amendatory act of the 28th of March, *supra*. In that case the society admitted its liability, and the only question was, whether it was to the assignee of the certificate or to the widow, and no question, therefore, was before the court as to the power of the corporation to issue the certificate in the first instance.

*Third*—The act of April 18, 1872, (Laws of 1871-2, p. 296,) authorized the formation of corporations in the manner therein pointed out, among which, as provided by its 29th to 34th sections, inclusively, are corporations "not for pecuniary profit," but corporations for the purposes of banking, *insurance*, real estate brokerage, the operation of railroads, and the business of loaning money, are expressly excepted, by the 1st section, from the act.    It follows, therefore, (the undertaking in this certificate being life insurance, within the contemplation of the act of 1869 in relation to that subject,) that it is impossible it could have been authorized to have been entered into by a corporation formed under this act of April 18, 1872.    But on the 28th of March, 1874, the legislature amended the 31st section of this act by adding thereto the following:    "Associations and societies which are intended to benefit the widows, orphans, heirs and devisees of deceased members thereof, and where no annual dues or premiums are required, and where the members shall receive no money, as profit or otherwise, shall not be deemed insurance companies."

It may be conceded that this language is in form expository; but the legislature can not instruct the judiciary how to construe certain statutes, any more than the judiciary can instruct the legislature what statutes it shall enact.    (*Ogden* v. *Blackledge*, 2 Cranch, 272; *Ashley's case*, 4 Pick. 23.)    But we concede that in determining the meaning of obscure clauses in statutes, it may often be important to look into other enactments by the same legislature, having reference to the same subject matter, as showing the sense in which the language

was evidently employed; but it is manifest that the enactments of a subsequent legislature, composed of different members, could have no more value, in that respect, than the acts of any other department of government. There are here no contemporaneous enactments of the General Assembly of 1869 having the slightest bearing upon the question of life insurance, nor are there any contemporaneous enactments of the General Assembly of 1872 throwing light upon the corporation act of that year. We must therefore assume that the General Assembly of 1874 knew what we hold, namely, that insurance by members of benevolent societies, of each other, upon the assessment plan, for the mutual benefit of themselves or of their respective widows, orphans, heirs or devisees, is life insurance, within the meaning of the original act of 1869 upon that subject, and that corporations for that purpose, therefore, can not be formed under the act of 1872; but since many persons were desirous of forming corporations "for the benefit of the widows, orphans, heirs and devisees of deceased members," without being subject to the insurance laws, and believing that the public welfare would be subserved thereby, it was determined to withdraw such corporations from the effect of the act of 1869, and to authorize their formation under the act of 1872; and this is sustained by the recital in the emergency clause, which assumes that such enactment was necessary to authorize the formation of the corporations under the act of 1872. The recital is: "Whereas, many associations are desirous of organizing forthwith for the purpose aforesaid," (for the benefit of the widows, orphans, heirs and devisees of deceased members,) "whereby an emergency exists why this act should take effect forthwith."

*Golden Rule* v. *The People ex rel.* 118 Ill. 492, is directly in point, and conclusive upon this question. In that case the society provided for the establishment of a relief fund, by voluntary contributions from the members of the order, from which, upon the death of a member, an amount, not exceeding

$1500, should be paid to such person as should have been designated by the deceased, and a sum, not to exceed $500, was to be distributed equally between the two members holding valid and existing certificates next in number, both above and below the number of the certificate of such deceased member; and it was held this was insurance, the formation for corporations for which is prohibited by the 1st section of the act of 1872, relating to the formation of corporations, and that it was not within the amendatory act of 1874, which authorizes the formation of corporations intended to benefit widows, orphans, heirs and devisees of deceased members.

The amendatory act of 1874 authorizes this certificate, to the extent that it is for the benefit of the widow, orphans, heirs and devisees of Rockhold; but it leaves the law precisely as it was before, with reference to the clause which obligates payment to be made to him upon arriving at seventy years of age, or after having been a member of the society, in good standing, for twenty-five years,—that is to say, prohibiting corporations to be formed therefor under the act of 1872, and prohibiting the making of such contract, and prohibiting the issue of the certificate by corporations which have not complied with the provisions of the act of 1869, in reference to life insurance.

We do not regard the fact that the legislature has, by the act of 1874, and by subsequent acts, manifested a willingness to restrict the operation of the general laws in relation to insurance in behalf of benevolent associations, from time to time, and to broaden correspondingly the scope of benevolent associations, as indicative of the meaning of prior legislation on that subject. What the prior acts mean, their words declare. What was originally within the operation of insurance laws remains there until withdrawn therefrom by subsequent legislation, and each subsequent legislative act must clearly show what is intended to be withdrawn from the operation of prior acts. We stated in *Commercial League Association* v. *The*

*People, supra,* the scope of the amendatory act of 1874, thus: "Three things seem to be required to bring the company within the amendment of the act: First, it must be an association intended to benefit the widows, orphans, heirs and devisees of the deceased members; second, no annual dues or premiums shall be required; third, the members shall receive no money, as profit or otherwise." In nothing which we have since said have we ever held that it extended any further.

*Benefit Association* v. *Blue,* 120 Ill. 121, was an action on a life benefit certificate issued by a corporation formed under the act of June 18, 1883, which is much more comprehensive than the act of March 18, 1874, extending beyond the enumerated objects of that act to "life indemnity or pecuniary benefits to relatives by consanguinity or affinity, accident or permanent disability indemnity to members thereof, devisees or legatees of deceased members," etc. There was no question there, as there is here, whether the risk was within the statute, but the sole question was, whether the beneficiary named in the certificate was one who could, under the language of the statute, be authorized to receive the amount insured, and it was held that was included in the right of the assured, given by the statute, to take a policy on his own life payable to his devisee or legatee,—and that, it was said, was not prohibited by any positive law, and the company was, therefore, estopped to plead *ultra vires.* The construction of the statute then given being authorized, as we still think it was, the remark in regard to estoppel, though correct enough, was not indispensable to the decision made. Nothing decided or said in the opinion in that case is opposed to the views we have expressed in the present case.

The 9th section of the "Act to provide for the organization and management of corporations, associations, etc., for the purpose of furnishing life indemnity or pecuniary benefit to widows, orphans, heirs, relatives and devisees of deceased members, or accident or permanent disability to members

thereof," approved June 18, 1883, does not assume to extend the powers of existing corporations, or to make valid acts done by them beyond the scope of their powers, but it simply professes to exempt the corporations or societies created for the enumerated purposes from the operation of the insurance laws, and to require them to comply with the provisions of that act, and it is prospective, only, in its operation. That act, moreover, was not adopted until more than eight years had elapsed after the certificate in suit was issued, and until nearly two years had elapsed after the society had ceased to issue similar certificates. And it is not claimed that this corporation has sought to amend its charter, by filing the requisite amendatory certificate with the Secretary of State, so as to invest itself with additional powers conferred by this act. In no view, therefore, can it have any application to the present case.

The clause in the certificate providing for the payment to Rockhold upon his arriving at seventy years, or after having been a member of the society, in good standing, for twenty-five years, being prohibited because the corporation had not complied with the insurance laws, is void, and can not be enforced, and the doctrine of estoppel can have no application to it. *Penn* v. *Bornman,* 102 Ill. 523.

It follows, that the judgment of the Appellate Court must be affirmed.

*Judgment affirmed.*

Mr. JUSTICE BAKER, having passed upon this case in the Appellate Court, took no part in its decision here.