MARTIN J. PETERSON, Exr., Plaintiff in Error, vs. THE
MANHATTAN LIFE INSURANCE COMPANY, Defendant
in Error.

*Opinion filed February 16, 1910—Rehearing denied April 7, 1910.*

1. LIMITATIONS—*defense of limitation to writ of error can only
be interposed by plea.* A defendant in error who desires to avail
himself of the defense of the Statute of Limitations to the writ
of error must interpose such defense by plea, otherwise it will
receive no consideration. (*International Bank* v. *Jenkins,* 104 Ill.
143, overruled; *Henry County* v. *Winnebago Swamp Drainage
Co.* 52 id. 454, distinguished.)

2. INSURANCE—*doubtful language of application is interpreted
most strongly against company.* If there is any doubt or uncer-
tainty in reference to the meaning of the question and answer in
an application for life insurance, growing out of the manner in
which the question is framed, the language used must be construed
most strongly against the insurance company.

3. SAME—*term "insurance company," in its restricted sense,
does not include. fraternal beneficiary societies.* The term "insur-
ance company," in its broader meaning, includes fraternal bene-
ficiary societies, but in its restricted sense and confining it to its
literal meaning it does not include such societies.

4. SAME—*the Modern Woodmen of America is not strictly an
insurance company.* The Modern Woodmen of America is not
strictly a life insurance company, and proof that an applicant for
life insurance had been rejected by such society does not show a
breach of warranty, contained in the application, based upon a
negative answer of applicant to the question, "Have you ever been
declined or postponed by any company? State name of company."

5. SAME—*the question and answer relating to rheumatism con-
strued.* Where an applicant for life insurance answers "no" to the
question, "Have you ever had rheumatism in any form? Number
of attacks, dates, duration, parts affected; state also whether there
were heart complications," such question and answer are properly
treated as a warranty that the applicant had not had rheumatism
in any form which involved heart complications, and not as a
warranty that he had never had muscular rheumatism involving
no such complications.

6. SAME—*a company cannot insist upon forfeiture for cause
within its knowledge.* An insurance company cannot insist upon
a forfeiture of the policy for a cause of which it had knowledge

when it issued the policy, and if it appears from the application that the applicant had had malarial fever, that fact cannot be set up by the company as constituting a breach of an alleged warranty by the applicant that he "has not been sick."

7. SAME—*company may waive any answer to question.* It is only where an answer is responsive to the question that it will be regarded as a warranty, and if the answer to a question in the application is entirely unresponsive, the company, by issuing the policy and collecting the premiums, will be regarded as having waived any answer to such question.

8. SAME—*what is necessary to show breach of warranty that applicant "has not been sick."* Treating a statement by an applicant for life insurance that he "has not been sick" as a warranty, it is necessary, in order to show a breach thereof, to prove that the applicant had suffered with something more than a mere temporary ailment which yielded readily to treatment.

9. SAME—*when answer is wholly unresponsive.* The answer, "Has not been sick," to a question in the application calling for "the names and addresses of physicians who have attended you or whom you have consulted during the last ten years, and for what diseases," is in nowise responsive to the question.

CARTWRIGHT and CARTER, JJ., dissenting.

WRIT OF ERROR to the Appellate Court for the Second District;—heard in that court on writ of error to the Circuit Court of Henry county; the Hon. W. H. GEST, Judge, presiding.

On October 11, 1897, Martin J. Peterson, executor of the last will and testament of Charles H. Peterson, deceased, brought an action in assumpsit in the circuit court of Henry county against the Manhattan Life Insurance Company, defendant in error, to recover the amount of a policy of insurance theretofore issued by the said company upon the life of said Charles H. Peterson, deceased. To the declaration defendant in error interposed the general issue and gave notice of special matters that it would rely upon in defense. The trial of the cause before the court without a jury resulted in the entry of a judgment against

the plaintiff on March 29, 1901. Thereafter, in August, 1904, the judgment of the circuit court was affirmed by the Appellate Court for the Second District, and to review that judgment Martin J. Peterson, as executor, has brought the record to this court by writ of error sued out by him in December, 1908.

On August 9, 1895, the deceased made application in writing to the defendant in error for a policy of insurance upon his life in the sum of $10,000. At the close of the application signed by him were these words: "It is hereby warranted that the above statements and answers are full, complete and true in every particular, and they are offered as a consideration for the insurance applied for, which, however, shall not be forfeited by any mis-statement made herein after three years from the date hereof."

The medical examination, which was a part of the application, contained, among others, the following questions, and answers made thereto by the applicant:

"Q. 68. Have you ever been declined or postponed by any company? State name of company.—A. No."

"Q. 24. Have you ever had rheumatism in any form? Number of attacks, dates, duration, parts affected. State also whether there were heart complications.—A. No."

"Q. 81. When did you last consult a physician, and for what reason?—A. July, 1895; malaria."

"Q. 82. Name and address of physician?—A. W. S. Bryan."

"Q. 83. Give the names and addresses of physicians who have attended you or whom you have consulted during the last ten years, and for what diseases.—A. Has not been sick."

These questions were printed in the printed blank form prepared by the insurance company to be used by its medical examiners in examining applicants for insurance, and the answers appeared in the handwriting of the medical examiner who examined the applicant for the company.

When the application was received by defendant in error at its New York offices the policy was prepared and sent to W. N. Sattley, its State manager for Illinois. Before it was delivered to Peterson, however, the company wrote Sattley to hold the policy until further investigation had been made regarding the risk, stating that it had been informed that it was thought that the applicant had some lung trouble. Sattley thereupon went to Cambridge, Illinois, the home of Mr. Peterson, and, after making sufficient investigation to satisfy himself that the risk was good, delivered the policy. The application was by the policy made a part of the contract of insurance. The death of the insured occurred in March, 1897, within three years from the date of the policy and after he had paid two annual premiums thereon. The cause of death was acute tuberculosis of the lungs.

It appears from the record that during the month of March, 1895, the deceased made application for membership in the Order of Modern Woodmen of America and for benefits in that order in the sum of $3000; that said application was rejected by the head physician of said order, and that notice of his rejection was sent to Peterson by said order five months before he signed the application for the policy of insurance here in controversy; that in June, 1894, he was troubled with muscular rheumatism and consulted a physician in reference thereto, who prescribed for him. In his application for membership in the Modern Woodmen he was asked the following questions and gave the following answers: "Have you ever had rheumatism?—A. Yes." "If so, give number, dates and duration of attacks.—A. One of thirty days."

A number of propositions of law were submitted to the court by both the plaintiff and defendant in error, some of which were refused and others held. Errors and cross-errors assigned question the action of the court in passing on various of these propositions.

CHARLES E. STURTZ, and WILLIAM C. EWAN, for plaintiff in error.

PECKHAM, PACKARD, AP MADOC & WALSH, for defendant in error.

Per CURIAM: When the judgment was entered in the Appellate Court, plaintiff in error, by the statute then in force, had five years in which to sue out a writ of error from this court. On July 1, 1907, section 117 of chapter 110, Hurd's Revised Statutes of 1908, became effective. By that section the time within which a writ of error might be sued out was reduced from five years to three years. The writ herein was sued out more than three years but less than five years after the date of the judgment of the Appellate Court. Defendant in error has not pleaded the statute nor moved to dismiss the writ, but insists by its brief that the three year statute applies, and states that it entertains the hope that this court will decide, on its own motion, that it has no jurisdiction. This defense to the writ can only be interposed by plea. (*Burnap* v. *Wight,* 14 Ill. 303; *Hauger* v. *Gage,* 168 id. 365.) When not so interposed it will receive no consideration. In the case of *International Bank* v. *Jenkins,* 104 Ill. 143, it was decided that the bar of the Statute of Limitations to a writ of error may be presented by a motion to dismiss as well as by a plea, where the writ appears on the face of the record to be barred and nothing is alleged to remove the bar. That decision is erroneous in principle and out of harmony with the decisions of the court before and since. The case of *Henry County* v. *Winnebago Swamp Drainage Co.* 52 Ill. 454, is cited in support of the doctrine. That, however, was a chancery case, as are all those in which it has been held that the defense of the Statute of Limitations may be made by demurrer. In equity, where it appears on the face of the bill that the cause of action is barred by *laches* or the Statute of Limi-

tations, the defect may be reached by demurrer to the bill. It is otherwise at common law. Even where a declaration shows, on its face, that the limitation prescribed by the statute has expired, a demurrer will not lie, because the plaintiff would thereby be prevented from pleading the exception to the statute which would prevent the bar. (*Wall v. Chesapeake and Ohio Railroad Co.* 200 Ill. 66; *Gunton v. Hughes,* 181 id. 132.) The writ of error is a common law writ. The limitation of time for bringing it was twenty years, but even though brought afterward it would not be quashed on motion, because this would deprive the party of the benefit of replying the exceptions in the statute. (2 Tidd's Pr. 1141.) The defendant in error could avail itself of the defense only by plea. The court cannot judicially take notice of it, as the limitation of time is no objection to the jurisdiction of the court. (*Brooks* v. *Norris,* 11 How. 204.) The assignment of errors is the declaration of the plaintiff in error. If the defendant in error wanted to have the benefit of the Statute of Limitations it should have filed a plea setting it up, though if the plea had been found against it a reversal would necessarily have followed. *Austin* v. *Bainter,* 40 Ill. 82; *Mahony* v. *Mahony,* 139 id. 14; *Thornton* v. *Houtze,* 91 id. 199.

The 68th question contained in the medical examination was, "Have you ever been declined or postponed by any company? State name of company." The answer was, "No." It appears by the undisputed evidence that the deceased had made an application for membership and benefits in the Modern Woodmen of America in March, 1895, which had been rejected, as the deceased knew at the time he made application for insurance to defendant in error.

The proposition of law No. 11, submitted by defendant in error and held by the trial court, was to the effect that the Modern Woodmen of America is a life insurance company, and that if the deceased made application for membership and benefits in the Modern Woodmen of America,

which application was rejected, then the plaintiff in error could not recover in this case because deceased answered "no" to the 68th interrogatory herein above set out.

The court refused the proposition of law No. 8, submitted by plaintiff in error, which was to the effect that proof that the application of the deceased to the Modern Woodmen of America had been rejected did not show a breach of the warranty evidenced by question 68 and the answer thereto. It is urged by plaintiff in error that the trial court erred in holding the eleventh and in refusing the eighth proposition.

It is to be observed, in the first instance, that question 68, standing alone, is of doubtful significance. It does not appear whether it referred to a banking company, a life insurance company, a fire insurance company or a company of some other kind, and it does not appear to what sort of a proposition or offer of the deceased it had reference. There is no other question in the examination, so far as we are able to perceive, that pertains in any degree to any previous application for life insurance or for membership in a fraternal beneficiary society which could aid this question by reference.

If, however, defendant in error be given the benefit of a presumption which no doubt arises from the circumstances under which the question was propounded, to the effect that the deceased and defendant in error both understood it to mean, "Have you ever made any application for life insurance which has been declined by any life insurance company, or has the delivery to you of any contract of life insurance ever been postponed by any life insurance company," the question still remains whether the Modern Woodmen of America is to be regarded as a life insurance company within the meaning of this question and answer. If there is doubt or uncertainty in reference to the meaning of the question and answer, growing out of the manner in which the question is framed, the language

used must be interpreted most strongly against the defendant in error. If a clause in a contract of insurance is susceptible of two interpretations, that one will be adopted which is most favorable to the insured. *Forest City Ins. Co.* v. *Hardesty,* 182 Ill. 39.

The Modern Woodmen of America is a fraternal beneficiary society organized under the laws of Illinois. Section 258 of chapter 73, Hurd's Revised Statutes of 1908, provides: "A fraternal beneficiary society is hereby declared to be a corporation, society or association formed, organized or carried on for the sole benefit of its members and their beneficiaries, and not for profit. Each society shall have a lodge system, with ritualistic form of work and representative form of government, and may make provisions for the payment of benefits in case of disability and death, or of either, resulting from either disease, accident or old age of its members." The persons to whom the death benefit can be made payable are limited to certain classes. Section 31 of chapter 32, Hurd's Revised Statutes of 1908, provides, among other things: "Associations and societies which are intended to benefit the widows, orphans, heirs and devisees of deceased members thereof, and members who have received a permanent disability, and where no annual dues or premiums are required, and where the members shall receive no money as profit or otherwise, except for permanent disability, shall not be deemed insurance companies." In *Commercial League* v. *People,* 90 Ill. 166, it was held that an organization such as the Modern Woodmen was not a life insurance company, within the meaning of the statute requiring that any life insurance company operating in this State should have a capital of a certain amount which should be invested in a certain manner. In *Martin* v. *Stubbings,* 126 Ill. 387, it was said: "A mutual benefit society is not a life insurance company in the restricted sense in which that term is used in our statute in relation to life insurance companies, nor is a cer-

tificate of membership in such society a policy of life insurance in the same restricted sense of the term, yet it is manifest that such membership certificate is in the nature of a mutual life insurance policy." But in *Rockhold* v. *Canton Masonic Mutual Benevolent Society*, 129 Ill. 440, and in other cases which follow, it has been held that an organization such as the Modern Woodmen is an insurance company in the enlarged sense of that term.

In the ordinary sense a fraternal order is not an insurance company. Fraternal organizations exist which have nothing in the nature of insurance, others which issue no certificate and yet pay a death benefit, others which issue certificates and pay death benefits to some of its members and not to others, and others organized for the purpose of benefiting the widows, orphans, relatives or dependents of deceased persons. The latter have some of the characteristics of insurance companies, the chief resemblance consisting in the fact that a sum of money is payable upon the death of the member in the one case, the insured in the other, to the beneficiary. But the two classes of corporations are organized under different acts and for different purposes. A life insurance policy may be obtained either by the insured or anyone having an interest in his life, may be payable to his estate, to a creditor or to a beneficiary named, and upon his death the amount is an ordinary debt, subject to garnishment or other process of the law. The certificate of a beneficiary society may be obtained only by the member. It cannot be made payable to his estate, but only to his widow or children or someone belonging to the classes mentioned in the statute, and the amount of the benefit is not an ordinary debt, subject to the claims of creditors by any legal or equitable process, but is expressly exempt from appropriation to the payment of any debt or liability of a certificate holder, or of any beneficiary named in a certificate, or of any person having any right thereunder. The insurance company is an ordi-

nary business corporation and its policies are obtained for ordinary business purposes, for investment, for security, for the benefit of credit, as well as for the protection of the family. The beneficiary society is organized not for purposes of profit. Its certificates cannot be used for business purposes. Its members can receive no pecuniary advantage from its certificates. Creditors cannot reach such certificates, and the only purpose of the society is the benefit of the widows or orphans of its members or persons within the other classes mentioned in the statute. The defendant in error and beneficiary organizations belong to different classes of corporations, and in view of their different character, the different purposes for which they exist and the different methods of their business, the question under consideration would not necessarily call the attention of an ordinary person to his membership in fraternal societies or his application for such membership therein, or be regarded by him as calling for a disclosure in regard thereto.

The two cases principally relied upon by defendant in error in this regard are *Alden* v. *Knights of Maccabees,* 178 N. Y. 535, and *Bruce* v. *C. M. L. I. Co.* 74 Minn. 310. In the New York case the question propounded to the applicant was this: "Have you ever been rejected by any life insurance company or association?" The answer was, "No," when, in fact, the applicant had been rejected by another "tent" of the Knights of Maccabees other than the "tent" to which the application for the certificate involved in the reported case was made. In the Minnesota case the question was, "Has any company or association" ever declined or postponed insurance on your life? It is to be observed that in each of these cases the question was broader than the one in the case at bar, the interrogatory being as to rejection by any life insurance company or "association." The distinction is obvious. The inclusion of the word "association" in the question extends the range of the inquiry.

Plaintiff in error regards *Penn Mutual Life Ins. Co.* v. *Bank Co.* 38 L. R. A. 33, decided by the United States Circuit Court of Appeals for the sixth circuit, as in point. There the question was, "Have you your life insured in this or any other company? (If so, give the name of each company and the kind and amount of each policy.)" The answer enumerated several policies in various regular or "old line" insurance companies. The applicant omitted, however, to make any mention of certificates which he held "in the Knights of Pythias and Royal Arcanum mutual aid associations." The court determined that these certificates were not within the scope of the question, and used this language: "We cannot presume the company to have been ignorant of the fact that large numbers of persons have taken out life insurance in mutual benefit associations which are not ordinarily described as insurance companies, and that doubt has often arisen whether the contracts they issue are properly or technically described as life insurance at all. (*Continental Life Ins. Co.* v. *Chamberlain,* 132 U. S. 304; 33 L. ed. 341.) Having in view the well established rule that insurance contracts are to be construed against those who frame them, (*Accident Ins. Co.* v. *Crandal,* 120 U. S. 527, 533; 30 L. ed. 740, 743; *Manufacturers' Accident Indemnity Co.* v. *Dorgan* 16 U. S. App. 290, 309; 7 C. C. A. 581; 58 Fed. Rep. 945; 22 L. R. A. 620;) and that any doubt or ambiguity in them is to be resolved in favor of the insured, we conclude that a certificate in a mutual benefit and social society was not within the description, 'policy of life insurance in any other company.' "

Questions closely allied to the one before us have frequently arisen, under varying conditions, in the courts of other States, and the conclusions reached in the different jurisdictions are by no means uniform. It is a matter of general knowledge that officers and agents of insurance companies of the class to which defendant in error belongs invariably refuse to regard societies such as the Modern

Woodmen as insurance companies, and this fact is entitled to consideration in determining what the question and answer meant to the insurer.

We think that a correct statement of the law is this: The term "insurance company," in its broader meaning, includes fraternal beneficiary societies; in its restricted sense and confining it to its literal meaning it does not include such societies. Applying, then, the ordinary rule of construction which obtains in determining the meaning of contracts of insurance, the Modern Woodmen of America is not to be regarded as an insurance company within the meaning of the question propounded. It follows that the eleventh proposition of law should have been refused and the eighth proposition of law should have been held.

The 24th interrogatory contained in the medical examination was this: "Have you ever had rheumatism in any form? Number of attacks, dates, duration, parts affected; state also whether there were heart complications." The answer was, "No." The proof showed that the applicant had suffered from muscular rheumatism but that there were no heart complications. The court held proposition of law No. 1, submitted by plaintiff in error, to the effect that by this question and answer the applicant warranted that he had not had rheumatism in any form which involved heart complications, and that evidence which showed that he had suffered from muscular rheumatism, but that with such disease there were no heart complications, did not show a breach of warranty. The company by cross-error urges that to so hold was error. We think the proposition was in accordance with the law. The so-called question, in fact, included a half dozen questions. Where two questions are included in one, the fact that the party to whom they are addressed is apt to answer the second question and ignore the first is well known. We think the construction put upon this question and answer by the trial court is neither strained nor unreasonable.

The 83d question, so-called, was this: "Give the names and addresses of physicians who have attended you or whom you have consulted during the last ten years, and for what diseases." The answer was, "Has not been sick." The application itself showed that in the preceding July deceased had consulted Dr. W. S. Bryan, and that he was then sick with malarial fever for about ten days. The proof also showed that the attack of muscular rheumatism above referred to occurred within the ten-year period, and that he consulted Dr. J. A. Kirkland at that time. Proposition of law No. 2, which was submitted by the plaintiff and held by the court, was, in effect, that the words "has not been sick" were not responsive so far as the question sought to elicit the names and addresses of physicians who had attended upon or been consulted by the applicant during the last ten years, and that before the warranty that the applicant had not had any disease within ten years (which warranty the court held to exist by reason of this answer) was broken, the disease proven must be something other than a temporary ailment which readily yielded to treatment, and if the evidence showed that the ailment,—muscular rheumatism,—was temporary in character and readily yielded to treatment, then the warranty had not been broken and there was no obstacle to recovery so far as question 83 and the words written as an answer thereto were concerned. This proposition is attacked by an assignment of cross-error.

If it be conceded that the statement "has not been sick" be a warranty, then the fact that deceased had suffered from malarial fever would not be a breach, as that sickness was revealed by other portions of the medical examination. An insurance company cannot insist upon the forfeiture of an insurance policy for a cause of which it had knowledge when it issued the policy. (*Security Trust Co.* v. *Tarpey,* 182 Ill. 52.) The evidence showed that the disease commonly called muscular rheumatism is not true rheumatism

but is a nervous disease affecting the muscles, the technical name of which is myalgia. Dr. Kirkland, called by defendant in error, testified that the deceased, while suffering from this ailment, consulted him three or four times; that he prescribed for him and the trouble readily yielded to the treatment. While we are disposed to regard as sound the trial court's view of the character of the illness, proof of which would be essential to show a breach of the warranty even if a warranty had been created by the statement "has not been sick," (*Minnesota Mutual Life Ins. Co. v. Link,* 230 Ill. 273,) we also think the objection to this proposition of law without merit for another reason.

In *Commercial Mutual Accident Co. v. Bates,* 176 Ill. 194, it was said: "Although a policy of insurance refers to and makes the application a part of the policy, yet it is well settled that only such statements as are made strictly in answer to the inquiries contained in the application can be regarded as warranties." The answer now under consideration is in nowise responsive. The question sought to elicit the names of the physicians whom deceased had consulted or who had attended upon him, and in case he had consulted or been attended by physicians then he was required to name the diseases in reference to which he had consulted them or for which they had attended upon him. The latter part of the question required an answer only in case the first part of the question was answered by naming a physician or physicians. To say "has not been sick" does not answer any part of the question. It may be, as suggested by defendant in error, that in view of the history of this applicant the conclusion should be that this answer was a palpable evasion, made for the purpose of avoiding a recitation of facts that would lead to the rejection of the application for insurance. But the company did not elect to require an answer to the question. On the contrary, it issued the policy with that evasion appearing in the medical examination. If the answer was good enough when the

company desired to collect premiums from the applicant, it ought to be good enough when the company is called upon to pay. By issuing the policy the company waived any answer to this question. (*Hall* v. *P. M. F. Ins. Co.* 6 Gray, 185; *Phœnix Ins. Co.* v. *Raddin,* 120 U. S. 183.) The court committed no error of which the company can complain in holding the second proposition.

The judgments of the Appellate Court and the circuit court will be reversed and the cause will be remanded to the latter court for a new trial.

*Reversed and remanded.*

CARTWRIGHT and CARTER, JJ., dissenting:

The obvious purpose of the question, "Have you ever been declined or postponed by any company?" was to ascertain whether any company engaged in the business of making contracts of life insurance had declined or postponed the applicant as not a suitable subject for insurance. For that purpose it made no possible difference to the parties whether the company rejecting or postponing the applicant had the name of life insurance company or not. The question did not use the restricted term "life insurance company," but the words used were, "any company." The Modern Woodmen of America, which had rejected the applicant, issued certificates which were essentially contracts of life insurance. Its contracts occupied the place of ordinary insurance policies and were contracts of insurance if considered apart from all merely arbitrary statutory classifications. (*Rockhold* v. *Canton Masonic Benevolent Society,* 129 Ill. 440.) The contracts between such organizations and their members are life insurance policies. (*Railway Passenger Conductors' Aid Ass'n* v. *Robinson,* 147 Ill. 138; *Lehman* v. *Clark,* 174 id. 279; *Supreme Order Iron Hall* v. *Grigsby,* 178 id. 57; Joyce on Insurance, sec. 444.) We see no reason for restricting the language used by the parties to one class of companies furnishing

life insurance.   The information was important to the insurance company, and no less important if the company rejecting the applicant did not belong to a limited class of companies furnishing life insurance.   It was, however, a life insurance ·company for all purposes except that it was exempt from complying with the general Insurance law and was governed by a separate code of rules applicable to such companies.   *Railway Passenger Conductors' Aid Ass'n* v. *Robinson, supra.*

Mr. JUSTICE HAND, having been of counsel in the trial court, took no part in the consideration or decision of this case.